UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD F.S.,[1]<br><br>                      Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,[2] Acting Commissioner of Social Security,<br><br>                      Defendant. | Case No.: 23cv0812-RBM-SBC<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER**<br><br>**[ECF NO. 12]** |

      This report and recommendation is submitted to the United States District Judge Ruth B. Montenegro pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

      Richard F.S. ("Plaintiff") filed this action pursuant to 42 U.S.C § 405(g) seeking judicial review of the final administrative decision of the Commissioner of the Social

---

[1] The Court refers to Plaintiff using only his first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d).

1

Security Administration ("Commissioner") regarding the denial of his application for disability insurance benefits under Title II of the Social Security Act. (ECF No. 1.) The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled, as defined in the Social Security Act, from February 28, 2014[3] to March 31, 2014, the date last insured. (ECF No. 7 at 336 [Administrative Record "AR"].) Now pending before the Court is Plaintiff's Motion for Summary Judgment filed on September 18, 2023. (ECF No. 12.) Defendant filed a response to Plaintiff's motion on November 15, 2023, and Plaintiff filed a reply on November 30, 2023. (ECF Nos. 16, 17.)

Having reviewed and considered the parties' submissions and the entirety of the administrative record, the Court **RECOMMENDS** that judgment be entered **REVERSING** the decision of the ALJ and **REMANDING** this matter for further administrative proceedings consistent with the findings presented herein.

I.    PROCEDURAL HISTORY

This case involves a lengthy procedural history and pertains to a period approximately ten years ago, as the date last insured expired on March 31, 2014. *See* 20 C.F.R §§ 404.101(a), 404.315 (claimant must have "insured status" to qualify for disability benefits). Plaintiff filed a Title II application for disability benefits on May 18, 2014[4], alleging a disability beginning on July 2, 2012. (AR at 151-52.) The Commissioner denied Plaintiff's claim initially on September 26, 2014, and on reconsideration on January 7, 2015. (*Id*. at 85-88, 94-99.) On March 9, 2015, Plaintiff filed a written request for a *de novo* hearing. (*Id*. at 100-01.) On March 27, 2017, a hearing was held before ALJ MaryAnn

---

[3] The ALJ's decision states an alleged onset date of July 12, 2012. (AR at 336.) However, Plaintiff previously amended the onset date to February 28, 2014. (*Id*. at 347.) The Court presumes that the ALJ intended to use the amended onset date and proceeds accordingly.
[4] The ALJ's decision states that Plaintiff applied for disability benefits on May 18, 2024. (AR at 336.) The Administrative Record, however, shows that Plaintiff's application was completed on May 19, 2024. (AR at 151.) The date discrepancies do not change the outcome of this decision.

Lunderman, during which Plaintiff amended his alleged onset date to February 28, 2014 because he felt that his condition worsened since 2012. (*Id*. at 18, 46-66.) On April 21, 2017, ALJ Lunderman issued an unfavorable decision denying Plaintiff's request for disability benefits. (*Id*. at 15-25.) On April 27, 2018, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-6.) On that date, the ALJ's decision became the final decision of the Commissioner. (42 U.S.C. § 405(h).)

On June 25, 2018, Plaintiff filed a complaint seeking judicial review of ALJ Lunderman's decision, in *Schuh v. Berryhill,* No. 18-CV-1398-BEN-AGS (S.D. Cal. June 25, 2018. (AR at 367-72.) On July 29, 2019, Magistrate Judge Andrew G. Schopler issued a report and recommendation granting Plaintiff's motion for summary judgment, denying Defendant's cross-motion for summary judgment, and remanding the case for further proceedings. (*Id*. at 401-05.) Judge Schopler found the ALJ committed harmful error when the ALJ discounted the opinion of Plaintiff's treating doctors without considering various regulatory factors. (*Id.*) On September 26, 2019, District Judge Gonzalo P. Curiel adopted the Magistrate Judge's report and recommendation. (*Id.* at 382-400.) On November 14, 2019, the Appeals Council notified Plaintiff that his case was remanded to the ALJ. (*Id.* at 406-09.)

On June 29, 2022, ALJ Randolph Schum presided over a telephonic hearing. (AR at 342-59.) Plaintiff appeared at the hearing via telephone, represented by his counsel, Justin Prato. (*Id.*) Plaintiff and Vocational Expert ("VE"), Alan Cummings, testified at the hearing. (*Id.*) On July 8, 2022, ALJ Schum found Plaintiff was not disabled, as defined by the Social Security Act, from [February 28, 2014] to March 31, 2014. (*Id.* at 325-36.) On July 28, 2022, Plaintiff submitted a request for review, alleging that "[t]he ALJ did not properly apply the law to the facts and did not properly weigh[] the evidence." (*Id.* at 508.) On March 7, 2023, the Appeals Council affirmed the ALJ's decision that Plaintiff was not disabled during the relevant period. (*See id.* at 316.) Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C § 405(g). (*See* ECF No. 1.)

## II.  FACTUAL BACKGROUND

### A. Plaintiff's Medical History and Treatment

Plaintiff is currently a 64-year-old male who alleged physical impairments and an inability to work due to a disability that began on July 2, 2012, later amended to an onset date of February 28, 2014. (AR at 49, 67.) Plaintiff has a history of low back pain, first injuring his back at the age of fourteen while helping a neighbor with demolition work. (*Id*. at 272.) He received a microdiscectomy in 2008 and a fusion of L4-L5 in 2010 for a work-related injury. (*Id*. at 52, 220, 273.) According to Plaintiff, he left his last job at Labor Ready in 2012 due to back pain. (*Id*. at 52.)

Plaintiff's treatment history in 2014 includes numerous procedures and clinical visits for a wide variety of complaints. On March 12, 2014, Plaintiff went to urgent care for back pain, and was seen by Dr. Buchner who noted that Plaintiff had a history of significant low back pain and occasionally takes non-steroidal anti-inflammatory drugs ("NSAIDs") and Norco for the pain. (AR at 220.) Dr. Buchner noted in his physical exam of the musculoskeletal system that there was "localized tenderness: tenderness of the paraspinal muscles and point tenderness over the L-spine spinous processes" and diagnosed Plaintiff with chronic back pain and obesity. (*Id.* at 221, 224.) Plaintiff was prescribed celebrex for his back pain. (*Id.* at 224.) Dr. Buchner also referred Plaintiff to a spine specialist and encouraged him to make diet, exercise, and lifestyle changes. (*Id.* at 224, 264.) On March 19, 2014, Plaintiff returned to Dr. Buchner for a follow up and was prescribed hydrocodone-acetaminophen and nabumetone for his back pain due to the celebrex not helping with his pain. (*Id.* at 226-28.)

On April 21, 2014, Plaintiff saw Dr. Ignacio for his low back pain. (AR at 272-76.) Dr. Ignacio conducted a physical examination and noted that Plaintiff had no costovertebral angle ("CVA") tenderness, no swelling, a normal gait, his range of motion and strength were normal in all directions, and a negative straight and cross leg raise test, but he was positive for tenderness along the right flank musculature and the lower back around his prior surgical scar. (*Id.* at 274-75.) Dr. Ignacio then ordered a follow up magnetic resonance

imaging ("MRI") to look at Plaintiff's fusion, and to rule out spinal stenosis or other abnormalities. (*Id.* at 276.) Dr. Ignacio also recommended Plaintiff initiate yoga and provided him with a book for eight steps to a pain-free back. (*Id.*)

On May 3, 2014, Plaintiff went to the urgent care for upper back discomfort where an MRI was taken of his lumbar spine and found "uncomplicated surgical findings, moderate to severe bilateral neural foraminal encroachment at the L4-5 level L>R and the R L5-S1 levels caused by bony hypertrophic changes." (AR at 234-36, 284.) On May 14, 2014, Plaintiff saw Dr. Ignacio for a follow up MRI as he continued to have low back pain. (*Id*. at 231.) At the time, Plaintiff stated he walked 10-12 miles a day and took 1-3 Norco pills per day. (*Id*.) Upon physical examination, Dr. Ignacio found no CVA tenderness but found tenderness upon palpation of the back along the right flank musculature and the lower back. (*Id*. at 233.) Dr. Ignacio ordered a computed tomography ("CT") scan of both right and left side of the back due to "different levels per the MRI report and exam findings." (*Id*. at 237.)

On May 15, 2014, Plaintiff saw Dr. Buchner, who noted that the MRI shows "multilevel lumbar disease," and that Plaintiff takes 2-3 norco pills per day. (AR at 238.) Dr. Buchner assessed Plaintiff with chronic back pain and an opioid dependence. (*Id*. at 241.) On May 23, 2015, Plaintiff had a CT guided L4-5 bilateral transforaminal epidural injections as ordered by Dr. Ignacio. (*Id*. at 243-44.) Plaintiff returned to Dr. Ignacio on June 23, 2014, with his chief complaint being back pain. (*Id*. at 244.) Plaintiff stated that the epidural injection relieved pain to his right calf and left foot but after that "all the pain came back." (*Id*.) Dr. Ignacio noted that Plaintiff had a negative straight leg and cross leg raise, but he did have tenderness upon palpation of his back to the right flank musculature and lower back around his prior surgical scar. (*Id*. at 247.) Dr. Ignacio requested both a consultation and transfer of care to neurology, based on Plaintiff's diagnosis of back pain and lack of benefit from steroid injections. (*Id*. at 247, 277.)

On June 25, 2014, Plaintiff saw Dr. Buchner to discuss his back issues. (AR at 249.) Dr. Buchner noted Plaintiff was taking three hydrocodone-acetaminophen, aspirin, and two

nabumetone a day, and his assessment remained consistent of chronic back pain. (*Id.* at 249-50.) Nearly seven months later, on January 16, 2015, Plaintiff saw Dr. Buchner and complained of multiple musculoskeletal impairments ranging from right shoulder pain, low back pain, radiating pain, leg pain, heel pain, and occasional numbness and tingling into his hand and fingers. (*Id.* at 294.) Dr. Buchner noted Plaintiff was taking aspirin, hydrocodone-acetaminophen, meloxicam, and morphine sulfate for breakthrough pain, and recommended Plaintiff continue the pain medication and follow up with a back specialist. (*Id.* at 294, 296.)

## B. Summary of the ALJ's Findings

To assess Plaintiff's alleged disability, ALJ Schum conducted the five-step sequential analysis applicable to claims for SSI benefits. On July 8, 2022, ALJ Schum found Plaintiff was not disabled within the meaning of the Social Security Act from the amended onset date of [February 28, 2014] to March 31, 2014, the date last insured. (*See* AR at 325-36.) ALJ Schum made eleven findings of fact and conclusions of law:

1. Plaintiff met the insured status requirements of the Social Security Act on March 31, 2014. (AR at 328.)

2. Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of February 28, 2014, through his date last insured of March 31, 2014. (AR at 328 [citing 20 C.F.R § 404.1571].) Here, ALJ Schum noted Plaintiff worked after the alleged onset disability date, but the work activity did not meet the level of substantial gainful activity. (*Id.* at 328.)

3. Through the date last insured, Plaintiff had the following severe impairment: Lumbar Spine Disorders, post surgeries. (AR at 328 [citing 20 C.F.R § 404.1520(c)].) ALJ Schum noted that Plaintiff's impairment significantly limited his ability to perform basic work activities. (*Id.* at 328.)

4. Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR at 328 [citing 20 C.F.R §§ 404.1520(d), 404.1525, and 404.1526].) Here, ALJ Schum noted Plaintiff's spinal disorder did not meet the requirements of listing 1.04 because evidence did not show nerve root compression, limitation of motion of spine, or motor loss accompanied by sensory or reflex loss. (*Id*. at 328.)

5. Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R 404.1567(b) with the following limitations: (1) lift/carry up to twenty pounds occasionally and no more than ten pounds frequently; (2) sit/stand/walk a total of eight hours a day exclusive of normal breaks with the option to change positions every thirty minutes without leaving the work station; (3) never climb ropes, ladders, or scaffolds; (4) occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl; and (5) avoid concentrated exposure to unprotected heights and moving dangerous machinery. (AR at 328.)

6. Plaintiff was unable to perform any past relevant work. (AR at 334.) ALJ Schum explained that demands of his past work exceeded Plaintiff's RFC. (*Id.* [citing 20 C.F.R § 404.1565].)

7. Plaintiff was born on May 19, 1960, and was 53 years old on the date last insured, which is defined as an individual closely approaching advanced age. (AR at 334 [citing 20 C.F.R § 404.1563].)

8. Plaintiff had at least a high school education. (AR at 334 [citing 20 C.F.R § 404.1564].)

9. Transferability of job skills was immaterial to ALJ Schum's determination that Plaintiff is "not disabled." (AR at 334 [citing S.S.R 82-41, 20 C.F.R Part 404, Subpart P, Appendix 2].) Here, ALJ Schum applied the Medical-

|   |   |
|---|---|
| 1 | Vocational Rules as a framework, which supports a finding that Plaintiff |
| 2 | was "not disabled" regardless of transferable job skills. (*Id.* at 334.) |
| 3 | 10. Through the date last insured, considering Plaintiff's age, education, work |
| 4 | experience, and RFC, there were a significant number of jobs that existed |
| 5 | in the national economy that Plaintiff could perform. (AR at 334-35 [citing |
| 6 | to 20 C.F.R §§ 404.1569, 404.1569(a)].) Here, ALJ Schum cited the |
| 7 | vocational expert's testimony that Plaintiff could perform the requirements |
| 8 | of the following light jobs: packager, inspector, and assembler. (*Id.* at 335.) |
| 9 | 11. Plaintiff was not under a disability, as defined in the Social Security Act, |
| 10 | from [February 28, 2014], to March 31, 2014, the date last insured. (AR at |
| 11 | 336 [citing 20 C.F.R § 404.1520(g)].) |

### III.  LEGAL STANDARD

Title 42 U.S.C section 405(g) of the Social Security Act allows unsuccessful applications to seek judicial review of the Commissioner's final decision. The scope of judicial review is limited in social security determinations, and the Court only sets aside a denial of social security benefits when the ALJ's decision is based upon a harmful legal error, or it is not supported by "substantial evidence" in the record. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). If the ALJ commits a harmless error (an error inconsequential to the ultimate disability determination), the decision will be upheld. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In evaluating whether the ALJ's determination is supported by substantial evidence, the Court must consider the entirety of the record, weighing both the evidence that supports and the evidence that detracts from the Commissioner's determination. *Desrosiers,* 846 F.2d at 573, 576.

Where the evidence is susceptible to more than one rational interpretation, the reviewing court must affirm the ALJ's decision. *Smartt,* 53 F.4th at 494. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v, Shalala*, 53 F.3d 1035, 10239 (9th Cir. 1995). Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Thus, the Court has the power to enter, upon the completion of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing. 42 U.S.C. § 405(g).

## IV.  ISSUES IN DISPUTE

The following issues raised are: (1) whether the ALJ failed to properly evaluate Plaintiff's subjective statements; and (2) whether the VE's testimony conflicted with the Dictionary of Occupational Titles and the ALJ failed to address this discrepancy. (*See* ECF No. 12.) The Court discusses each issue below.

## V.  DISCUSSION

### A. The ALJ's Evaluation of Plaintiff's Subjective Statement Testimony

An ALJ assesses a claimant's subjective statements regarding his or her symptoms and limitations in two parts. §§ 404.1529(a), 416.929(a). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal quotation marks omitted). During this analysis, the claimant is not required to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Furthermore, the claimant does

not need to provide "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at 1014.

If the claimant meets the first prong of this analysis and there is no evidence of malingering, the ALJ can only reject the claimant's subjective testimony as to the severity of the impairment symptoms by explaining "specific, clear, and convincing reasons for doing so." *Id.* at 1014-15. "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* In order to meet the 'clear and convincing' standard the ALJ is required to "show [their] work[.]" *Smartt,* 53 F.4th at 499. If the ALJ fails to show their work through "provid[ing] specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, No. 21-35412, (9th Cir. 2024).

"General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Cater*, 157 F3d 715, 722 (9th Cir. 1988)); *Burrel v. Colvin*, 775 F. 3d 1133,1139 (9th Cir. 2014) (finding error where the ALJ fails to connect the medical record to the claimant's testimony and fails to make a "specific finding linking a lack of medical records to [the claimant's testimony about the intensity of his … symptoms").

In assessing a claimant's subjective testimony about his or her symptoms, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony or his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002); see also *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors) (citation omitted).

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain … it is a factor

that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling (SSR) 16-3p (S.S.A. Oct. 25, 2017) (SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"). "This means that an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt,* 53 F.4th at 499.

### 1. Plaintiff's Subjective Testimony

At the June 29, 2022, administrative hearing, the ALJ asked Plaintiff about his physical impairments. (AR at 344-59.) Plaintiff testified to suffering from back pain and explained that he underwent a micro disc procedure in 2008 and a back fusion surgery in 2010. (*Id.* at 348.) Plaintiff stated that he tried to work in 2012, but his pain became unbearable, and he was taking two to three hydrocodone to get through the day; "[he] couldn't deal with it anymore and … quit." (*Id.* at 350.)

Plaintiff stated that his pain plateaued until 2014-2015[5], when his back pain symptoms got significantly worse, causing him to be unable to stand or sit for extended periods of time. (AR at 351-52.) He elaborated that if he walked for thirty minutes, he would need to rest by "laying on [his] couch" for fifteen to thirty minutes "to get [his] back to calm down." (*Id.* at 352.) Plaintiff further explained that sitting did not help, and that if he sat for thirty minutes, he would need to take a break afterward. (*Id.*) Plaintiff stated he

---

[5] Plaintiff stated that the problems occurring in 2014 are substantially like those in 2015 and 2016. (AR at 351.)

spent "a good portion of [his] day lying on the couch, not doing a whole lot." (*Id.* at 348.) Plaintiff further testified that "sometimes [he] could get up and walk around a little bit [and] that would help sometimes, but other times, [he] [would] have to lay on [his] back to relax." (*Id.* at 352.) Plaintiff stated that he did not have any other impairments other than his back impairment. (*Id.* at 348.)

During his testimony, the ALJ asked Plaintiff about a statement he made to Dr. Buchner in June 2014 regarding exercising regularly. (AR at 348.) In response, Plaintiff stated that he would do stretches for his back and "tr[ied] going for walks" but he would "[take] hydrocodone so [he] could do those" activities. (*Id.*) When asked about his weight change, Plaintiff stated that he has lost a lot of weight "trying to help [his] back." (*Id.* at 347.) Plaintiff stated that he has Parkinson's now, so he has to keep moving or he will not be able to. (*Id.* at 352.) Lastly, when the ALJ questioned Plaintiff about gaps in the medical record regarding the time period of 2012 to 2015, Plaintiff responded that he did not intentionally choose not to go to the doctor but that he was unable to afford health insurance. (*Id.* at 352-53.)

### 2. The ALJ's Analysis of Plaintiff's Subjective Statements

The ALJ's decision noted the following of Plaintiff's alleged impairments:

> The claimant testified he underwent a micro disk procedure in 2008 and underwent a back fusion operation in 2010. The claimant testified that starting in 2012 he was not able to work due to pain. The claimant testified that in the 2014 period his pain symptoms became worse. In the 2014 period, the claimant reported he was not able to stand or sit for a long period of time due to back pain. The claimant reported in the 2014 period if he walked for 30 minutes he would need to rest for 15 minutes to half an hour to get his back to calm down. The claimant reported if he sat for 15 minutes he would need to take a break. The claimant testified in 2014 he was exercising regularly, such as going for walks and doing stretching exercises. The claimant reported that in the 2014 period he did not go the doctor often because he could not afford health insurance. The claimant testified he did not have impairments other than his back.

(AR at 329.)

The ALJ found that the record established medically determinable impairments that could reasonably be expected to cause Plaintiff's alleged symptoms, but he rejected Plaintiff's subjective statement testimony, finding that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record." (AR at 329.)

In making the determination, the ALJ stated, "The totality of the objective medical evidence and the longitudinal record failed to support the claimant's allegations of disabling symptoms and limitations." (AR at 329.) This finding meets the threshold with respect to part one. Subsequently, because there was no finding of malingering, the ALJ was required to make specific findings stating clear and convincing reasons for discounting Plaintiff's subjective statements. *See Smolen*, 80 F.3d at 1283-84. In doing so, the ALJ must specify "which symptoms testimony is not credible and what facts in the record lead to that conclusion." *Id.*

### a. Analysis of the ALJ's Decision

Upon review of the ALJ's decision, the Court finds the ALJ failed to "'specifically identify' which testimony he found not credible and why.'" *See Lisa D. v. Kijakazi*, No. 22CV695-DMS(MSB), 2023 WL 5501215, at *7 (S.D. Cal. Aug. 25, 2023) (quoting *Holohan v. Massanari*, 246 F.3d at 1208 (9th Cir. 2001)). Instead, the ALJ generally explained that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." (AR at 329.) The Ninth Circuit has held this boilerplate language does meet the requirements of "specific, clear, and convincing" reasons for discounting a claimant's subjective testimony. *See, e.g., Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d at 1103 (9th Cir. 2014) (holding that this boilerplate introductory sentence falls short of "meeting the ALJ's responsibility" to discuss objective evidence); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (holding that the "vague allegation that [plaintiff's claims] were 'not consistent with objective medical evidence'" was inadequate to reject plaintiff's subjective testimony). After an ALJ makes this statement, "the ALJs typically identify what parts of

the claimant's testimony were not credible and why." *Treichler*, 775 F.3d 1090, 1103. Here, after the introductory remark, the ALJ merely stated "[t]he totality of the objective medical evidence and the longitudinal record failed to support the claimant's allegations of disabling symptoms and limitations." *Id.* "This was error and falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and the 'reason or reasons upon which' his adverse determination is based.'" *Id.*; 42 U.S.C § 405(b)(1).

Furthermore, after stating his conclusion to Plaintiff's non-credibility, the ALJ failed to identify Plaintiff's subjective statement testimony that was "not entirely consistent" with the medical evidence, and instead provided a detailed medical summary. (AR at 329.) As noted in *Lambert*, "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul,* 980 F.3d at 1278 (internal citations omitted; alterations and emphasis in original). Furthermore, "simply reciting the medical evidence in support of [a] residual functional capacity determination" does not meet the level of "clear and convincing" reasons for rejecting a claimant's testimony. *Brown-Hunter,* 806 F.3d at 489. While "contradiction with the medical record is sufficient basis for rejecting the claimant's subjective testimony," an ALJ must still "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Defendant does not address the ALJ's silence as to the specific statements Plaintiff proffered that ultimately undermined the credibility of his subjective symptoms. Instead, Defendant contends that the ALJ properly discredited Plaintiff's credibility as to his allegations because they were at odds with the longitudinal record and did not deserve full weight. (ECF No. 16 at 4.) To support this argument, Defendant points to the ALJ's statements regarding Plaintiff's daily activities, such as statements to his doctors about walking ten to twelve miles a day. (*Id.* at 5.) However, the ALJ noted Plaintiff's exercise activity while summarizing the medical evidence. (*Id.* at 330.) The ALJ did not indicate

that Plaintiff's exercise undermined his credibility, or that it was inconsistent with the record. (*See id.*) Moreover, at the administrative hearing, when asked about exercising regularly, Plaintiff stated that he would "tak[e] hydrocodone so [he] could do those" activities. (*Id.* at 348.) Plaintiff also stated that he has lost a lot of weight "trying to help [his] back." (*Id.* at 347.) This information is consistent with doctors' recommendations to exercise. (*Id.* at 224, 228, 250, 276, 296.)

Additionally, Plaintiff's statements to his doctors regarding his exercise activities are insufficient to sustain the ALJ's credibility assessment. *Contreras v. Saul*, 477 F.Supp.3d 1107, 1123-24 (S.D. Cal. Apr. 3, 2020) (concluding the ALJ's assessment was insufficient because the ALJ did not offer "specific, clear, and convincing reasons" for discounting Plaintiff's testimony even though the ALJ "refer[red] to…activities of daily living.") *Erika M. v. Kijakazi*, 2023 U.S. Dist. LEXIS 138402, 2023 WL 5042875, at *10 (S.D. Cal. Aug. 8, 2023) ("Even if the ALJ had articulated Plaintiff's daily activities as a reason to reject part of [his] testimony, the Ninth Circuit has 'repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.'")

Accordingly, the Court finds that the ALJ failed to provide specific reasoning as to which of Plaintiff's subjective statements undermined his credibility. The law imposes a requirement of specificity, which the Court finds to be lacking in the ALJ's decision. Such circumstances constitute harmful error as the ALJ's decision "did not identify specifically any such inconsistencies; [he] simply stated [his] non-credibility conclusion and then summarized the medical evidence." *Brown-Hunter*, 806 F.3d 487, 493 (9th Cir. 2015). This type of explanation does not provide the "specific reasons" a Court must have to conduct a meaningful review of the ALJ's decision to ensure a plaintiff's testimony is not arbitrarily discredited. *Id.*

/ / / /

/ / / /

### B. The Dictionary of Job Titles and the Vocational Expert's Testimony

The Court next addresses whether the VE's testimony on the type of jobs available to Plaintiff in the national economy conflict with the *Dictionary of Occupational Titles* ("DOT") regarding Plaintiff's limitation to avoid concentrated exposure to moving and dangerous machinery. At the administrative hearing on June 29, 2022, the VE testified that based on Plaintiff's current limitations, Plaintiff was not capable of returning to any past relevant work, but he could perform the following light jobs: (1) Packager DOT 559.697-074; (2) Inspector DOT 920-687-194; and (3) Assembler DOT 929.587-010. (AR at 355-56.) Plaintiff's counsel then asked the VE a hypothetical question regarding the use of machinery in the listed jobs, to which the VE replied, "these were manual labor jobs." (*Id.* at 357.)

Plaintiff contests the appropriateness of the occupations, arguing that the VE's testimony that the jobs are "manual labor jobs" conflicts with the DOT's job descriptions because they involve dangerous machinery, which Plaintiff is to avoid per his RFC determination. (ECF No. 12-1 at 6-7.) Defendant contends there is no apparent conflict between the VE's testimony and the DOT, and that substantial evidence supports the ALJ's step five finding that jobs existed in significant numbers in the national economy that Plaintiff could have performed. (ECF No. 16 at 8-11; AR at 334-35.)

In its disability determinations, the "Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy." *Buck v. Berryhill*, 869 F3.d 1051-52 (9th Cir. 2017). If there is an "obvious or apparent" conflict with the DOT, the ALJ has a duty to "sua sponte investigate and resolve the conflict." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020). For a conflict to be "obvious or apparent" the VE's "testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Furthermore, "SSR 00-4p unambiguously provides that '[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between

that [vocational expert] . . . evidence and information provided in the [DOT].'" *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Thus, under SSR 00-4p the ALJ has an explicit requirement to ask whether the evidence provided by the VE is consistent with the DOT and obtain an explanation if there is an apparent conflict. *Id.*

Here, at the administrative hearing, the ALJ asked the VE whether his testimony was consistent with the DOT, to which the VE responded that it was consistent. (AR at 356.) However, the VE's testimony that the jobs identified were all manual (the statement Plaintiff contends is contradictory to the DOT) occurred after this inquiry into consistency. (*Id.* at 356-57.) Thus, the Court will examine whether this statement is in "obvious or apparent" conflict with the DOT for the light jobs identified as Packager (DOT 559.687-074) and Assembler (DOT 929.587-010)[6]. The Packager position is described as:

> Inspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons: Visually examines molded products for defects, such as scratches, discoloration, and discards defective products. Packs inspected product in cartons according to customer specifications, and carries cartons to storage area, attach metal bands to bottle tops prior to packing to form necks for bottles and measure necks to ensure specified length, using gauge.

DOT 559.687-074.

(1) The Assembler position is described as:

> Couples and packages nuts and bolts: Screws nut on bolt by hand and holds nut in chuck of nut-turning machine that spins and tightens nut on bolt. Weighs or counts specified amounts of nuts and bolts, and records number of units on production form. Pushes box or carton along bench or onto conveyor. May tie long bolts into bundles, using wire. May feed nuts and bolts into hopper of machine that automatically couples and packages nuts and bolts.

---

[6] The VE also identified Inspector (920.687-194) as a job that Plaintiff could perform. However, during the administrative hearing and in the ALJ's decision, the DOT number for this job was incorrectly stated. (*See* AR at 335, 355.) The Court finds this error harmless and does not consider the Inspector position in its decision, given the VE identified other occupations that Plaintiff could perform.

1  DOT 929.587-010.

2     The above job descriptions do not clearly indicate that the machinery involved is inherently dangerous. The ALJ specified that Plaintiff should avoid "concentrated exposure to…. moving and dangerous machinery," and neither job requires such exposure. (AR at 328.) In fact, neither job requires any exposure to moving and dangerous machinery. While Plaintiff perceives a conflict regarding "concentrated exposure to…. moving and dangerous machinery," only one of the two identified occupations, the Assembler position, involves any machinery at all. (*See* ECF No. 12-1 at 6-7.)

   For a difference between an expert's testimony and the DOT's listing to be considered a conflict, "the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected; tasks that aren't essential . . . are less likely to qualify as apparent conflicts that the ALJ must ask about." *Gutierrez,* 844 F.3d at 808. Here, the use of machinery is not an essential task for the Assembler position, as it primarily involves manual labor. For instance, it involves screwing nuts on bolts by hand, weighing or counting specified amount of nuts and bolts, recording the number of units on production form, and possibly tying long bolts into bundles using wire. (*See* DOT 929.587-010.) Additionally, the machinery that the job *may* require, such as pushing boxes or cartons along a bench or onto a conveyer belt, and feeding nuts and bolts into a hopper machine, are routine tasks that do not necessarily suggest the presence of dangerous moving machinery.

   Therefore, the Court finds that the VE's testimony that these jobs are "manual labor jobs" does not meet the threshold of an "obvious or apparent" conflict with the DOT's listings for the identified jobs. Furthermore, Plaintiff's RFC and limitations are not in conflict with the tasks required by these jobs. Thus, the ALJ properly relied on the VE's testimony, as there was no "obvious or apparent" conflict between the VE's testimony and the DOT's listings for the identified jobs. *Ford*, 950 F.3d 1141, 1160.

## VI. CONCLUSION

   The last question for the Court is whether to remand for further administrative

proceedings of for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Spraque v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). A remand for an immediate award of benefits is appropriate only in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017). The Court concludes that "[t]her rare circumstances that result in a direct award of benefits are not present in this case." *Id.*

Instead, the Court finds that further administrative proceedings would serve a meaningful purpose so that Plaintiff's subjective statements may be properly evaluated. On remand, the ALJ must provide clear and convincing reasons for the weight given to Plaintiff's statements as outlined above. Based on the foregoing reasons, the Court **RECOMMENDS** that the District Court **VACATE** the ALJ's decision and **REMAND** this case for further administrative proceedings consistent with the findings presented herein.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **August 23, 2024**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 30, 2024**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 9, 2024

Hon. Steve B. Chu
United States Magistrate Judge